UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LORI SMITH,

                    Plaintiff,

vs.                                Case No.  2:08-cv-952-FtM-29SPC

NAPLES COMMUNITY HOSPITAL, INC. a
Florida not-for-profit corporation,

                    Defendant.
_____

## OPINION AND ORDER

        This matter comes before the Court on Defendant's Dispositive
Motion for Summary Judgment and Incorporated Memorandum of Law in
Support (Doc. #50) filed on January 5, 2010.  Plaintiff filed a
Response (Doc. #70) on February 12, 2010.  The motion seeks summary
judgment on all of plaintiff's claims of sex discrimination and
retaliation.  Also before the Court is Defendant's Objection to
and/or Motion to Strike Plaintiff's Response to Defendant's Motion
for Summary Judgment, Including Plaintiff's Declarations Filed in
Support (Doc. #74) filed on March 4, 2010.  Plaintiff filed a
Response to the Motion to Strike (Doc. #77) on March 23, 2010.

### I.

        The Court will first address Defendant's Motion to Strike.
Defendant NCH moves, pursuant to Fed. R. Civ. P. 12(f), to strike the
declarations filed in support of plaintiff's Response, as well as
any references to the stricken declarations that appear within
plaintiff's Response.  (Doc. #74.)  The declarations in question

are by plaintiff (Doc. #68-1), as well as three other women formerly employed by defendant, Barbara Cain (Doc. #66-2), Debbie Strum (Doc. #74-4), and Debra Freeman (Doc. #66-5).

An affidavit "submitted in connection with a summary judgment motion is subject to a motion to strike if it does not measure up to the standards of Rule 56(e) of the Federal Rules of Civil Procedure." Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000)(citing Seibel v. Society Lease, Inc., 969 F. Supp. 713, 715 (M.D. Fla. 1997)); Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 684-85 (M.D. Fla. 1999). Rule 56(e) states that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to matters stated therein." Thus, conclusory arguments, statements based on information and belief, and inadmissable hearsay are subject to motions to strike. Pashoian v. GTE Directories, 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002)(citing Story, 120 F. Supp. 2d at 1030). "[I]nadmissable hearsay cannot be considered on a motion for summary judgment." Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotations and citation omitted). However, the Court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" Id. at 1323. Additionally, an affidavit that is inherently

inconsistent with deposition testimony can be stricken as a sham. See <u>Reese v. Herbert</u>, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008).

Defendant argues that all four declarants were deposed in this case, and instead of relying on their depositions, plaintiff relies on their affidavits to supplement their deposition testimony. (Doc. #74, p. 2.) Further, Defendant argues that the declarations contain conclusory and speculative statements, rely on inadmissable hearsay, and are not entirely based on personal knowledge. (<u>Id.</u> at 3-10.) More specifically, defendant argues that plaintiff is "argumentative, makes conclusory statements, and gives baseless opinions" in her declaration. (Doc. #74, p. 4.) Defendant contends that the Cain, Freeman, and Strum declarations are replete with hearsay, and that Cain and Freeman recounted rumors of other unnamed women who Kevin Cooper may have sexually harassed. (Doc. #74, pp. 8-9.)

Plaintiff responds that the statements in question either are not hearsay because they are not submitted for the truth of the matter, are subject to a hearsay exception, or will be reduced to admissible testimony at trial. (Doc. #77, pp. 11-19.) Plaintiff concedes, however, that some statements are opinions not based on personal knowledge and therefore should be stricken. (<u>Id.</u> at 12-13, 15, 16, 18.)

The Court finds that those statements plaintiff concedes are conclusory and opinions not based on personal knowledge shall be stricken. Further, the Court finds that the statements in Cain's

and Freeman's affidavits that are based on the statements of other unknown women's interactions with Cooper are stricken as inadmissible hearsay. The Court will consider each affiant's testimony regarding her personal experience with Cooper and any testimony regarding Cooper's actions that they each personally perceived. With regards to the conclusory statements regarding Cooper's motivations, the Court will only consider them so far as they represent the affiant's perception. Defendant's motion to strike is otherwise denied.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. <u>Id.</u> The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). The Court does not, however, weigh conflicting evidence or make credibility determinations. Hilburn, 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).

### III.

In July 2001, plaintiff Lori Smith (plaintiff or Smith) was hired by defendant Naples Community Hospital, Inc. (NCH) as the Director of Radiation Therapy. (Doc. #51-1, p. 4.) In late 2001,

NCH created a new position in their radiation therapy practice, the Administrative Director of Oncology Services (ADOS), and plaintiff was promoted as ADOS in February 2002. (Id. at 9-10.) In 2002, plaintiff's primary job duties included: administrative responsibility for an inpatient oncology nursing unit; administrative responsibility for two outpatient infusion facilities; and responsibility for being the point person for the oncology service line. (Id. at 11.) In 2004, NCH created a oncology physician practice group, which plaintiff administratively supervised in addition to her other duties. (Id. at 30-31.) Sometime in early 2007, NCH started negotiations with 21st Century Oncology (21st Century) to sell NCH's radiation therapy practice. (Doc. #50, p. 6.)

In early 2007, plaintiff came under the supervision of Kevin Cooper (Cooper). (Doc. #70, at 9.) On November 30, 2007, plaintiff filed a charge of sexual discrimination against Cooper with the Equal Employment Opportunity Commission (EEOC). (Doc. #1, pp. 1-2.)

In December 2007, the oncology physician practice group closed, and thus plaintiff no longer served as its administrative director. (Doc. #51-1, at 35.) In February 2008, plaintiff learned of the pending radiation therapy practice sale to 21st Century. (Doc. #70, p. 13.) In April 2008, the sale to 21st Century was finalized, and NCH sold all of its assets associated

with the radiation therapy practice, including all of the employees associated with that practice.  (Doc. #51-1, p. 35.)

The process of terminating Smith began on or about April 8, 2008, when she met with NCH Human Resources representatives Brian Settle and Renee Thigpen.  NCH alleges that during the April 8, 2008 meeting, Smith was informed that her position was eliminated due to the sale to 21st Century and that she would stay on to help with the transition for 2-6 weeks.  (Doc. #50, p. 10 n.9.)  Smith maintains that she did not get a definitive answer as to whether she was terminated or how long she was to stay on because she asserted she still had responsibilities beyond the radiation therapy practice, and thus should still have a job with NCH after the sale.  (Doc. #70, pp. 15-16.)  After the meeting with Brian Settle and Renee Thigpen, Smith's counsel sent NCH's counsel a letter advising that she (Smith's lawyer) knew about the meeting and reminded NCH's counsel that Smith had filed a charge of discrimination and planned to see it through.  (Doc. #50, p. 9.)

Smith's termination was effective on or about April 25, 2008.  (Doc. #70, p. 17.)  NCH offered Smith 12 weeks of separation pay upon signing a release.  (Doc. #50, p. 10.)  NCH distributed all of Smith's remaining duties, including responsibilities for the oncology resource center and the cancer registry, to other NCH employees, two of whom were women.  (Doc. #70, p. 18-20.)  On or about June 2, 2008, Smith filed a second charge of discrimination with the EEOC, alleging retaliation.  (Doc. #1, p. 3.)

Plaintiff filed a six-count federal Complaint (Doc. #1) alleging discrimination based upon sex and retaliation. Counts I and IV allege sex discrimination based on a hostile work environment; Counts II and V allege termination of employment in retaliation for engaging in protected activity; and Counts III and VI[1] allege discrimination based on sex for the termination of employment. Counts I-III allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (Title VII), while the parallel Counts IV, V, and VI allege the same acts as violations of the Florida Civil Rights Act (FCRA), Chapter 760, Florida Statutes.[2]

## IV.

Title VII prohibits employers from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). This statute prohibits two categories of discrimination – disparate

---

[1] The Complaint contains two claims titled "Count V". (Doc. #1, p. 13.) The Court will refer to plaintiff's claim for sex discrimination under the Florida Civil Rights Act as Count VI.

[2] The FCRA is modeled after Title VII, <u>Joshua v. City of Gainesville</u>, 768 So. 2d 432, 435 (Fla. 2000), and decisions construing Title VII are applicable to claims under the FCRA. <u>Jiles v. United Parcel Serv., Inc.</u>, No. 09-13625, 2010 WL 27958 at * 1 (11th Cir. Jan. 7, 2010) (citing <u>Harper v. Blockbuster Entertainment Corp.</u>, 139 F.3d 1385, 1387 (11th Cir. 1998)). Therefore, the Court will not independently analyze the FCRA claims.

treatment and disparate impact.[3]    Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010)(en banc).  In disparate treatment situations, an employer discriminates against an employee because of the person's membership in a protected group (e.g., women).  Id.  Disparate treatment discrimination can take two forms – a tangible employment action or creation of a hostile work environment.  Id.; Nurse "Be" v. Columbia Palms W. Hosp. Ltd. P'ship, 490 F.3d 1302, 1308 (11th Cir. 2007).  Plaintiff alleges both forms of disparate treatment discrimination by alleging she was subjected to a hostile work environment and then was terminated from employment because of her sex.

Title VII also prohibits discrimination by retaliation.  Title VII provides, in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The statute thus contains an "opposition clause" and a "participation clause" protecting different types of protected activities.  Plaintiff claims retaliation only under the participation clause, alleging that her termination was in retaliation for her protected activities of filing her November 2007 EEOC charge and continuing to actively pursue her sex discrimination claim against Cooper.

---

[3]Disparate impact discrimination is not at issue in this case.

## A. Hostile Work Environment

In Counts I and IV Smith alleges that her supervisor, Kevin Cooper, created a hostile work environment because of her sex. To prove a hostile work environment claim, plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Reeves, 594 F.3d at 808 (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)). For purposes of the summary judgment motion, defendant asserts a lack of evidence as to elements (3) and (4) only. (Doc. #50, p. 18.) Plaintiff responds that there is sufficient evidence to create questions of fact for a jury as to both elements.

Workplace conduct is not "measured in isolation" but rather is considered "both cumulatively and in the totality of the circumstances." Reeves, 594 F.3d at 808. Plaintiff alleges that the following interactions with Cooper establish both disputed prongs of her hostile work environment claims. In May 2003, during plaintiff and Cooper's first meeting and long before he became plaintiff's supervisor, Cooper went "ballistic" regarding a missing chart. (Doc. #70, p. 9.) After Cooper began supervising Smith in early 2007, Cooper was not nice to Smith and generally ignored Smith's emails, voice mails, and appointments for meetings. (Id.) In a May 2007 meeting, when Smith tried to address Cooper's lack of

response to her emails and voice mails, Cooper responded aggressively by spinning around in his chair and pounding on his keyboard. (Id. at 10.) In November 2007, Cooper became enraged at Smith for allowing a NCH doctor's interview to be published in Time Magazine, and Smith described Cooper's anger as "palpable" and that she felt "like a child being scolded." (Id. at 10-11.) On two occasions Cooper demanded that Smith complete huge assignments with very short deadlines, and then ignored the work product. (Id. at 11.) At a November 6, 2007 meeting, Cooper "lit into" plaintiff stating that there were employee complaints, that none of the physicians she supervised or 21st Century employees liked her, and that she didn't fit into Cooper's vision for the oncology program. (Id. at 12.) Further, Cooper generally broke meeting appointments with plaintiff and her staff; overturned a disciplinary action plaintiff imposed; requested financial data about her department, implying that plaintiff manipulated data; and made antagonistic comments in front of VIPs. (Id. at 11.)

**(1) Harassment Based on Sex of Employee**

In order for the alleged harassment to be subject to Title VII, it must be based upon the plaintiff's sex. Mendoza, 195 F.3d at 1245. Although it is not the typical case, a sexual harassment claim can be based on offensive conduct which is not of a sexual nature but which is inflicted on an employee because of gender. Bell v. Crackin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir. 1985)(holding that "threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex of the victim" can be actionable.).

Nonetheless, "not all objectionable conduct or language amounts to discrimination . . . . Title VII is not a 'general civility code.'" Reeves, 594 F.3d at 808 (internal citations omitted). Thus, "[i]t does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." Id. at 809 (citing Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301-02 (11th Cir. 2007)). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998)(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993)(Ginsburg, J., concurring)).

The Complaint alleges that Cooper "was generally known . . . as a misogynist" (Doc. #1, p. 7) and "Cooper could not work with intelligent, effective, powerful women [and his] conduct was not directed at intelligent, effective, powerful men, . . . ." (Id.) While Title VII makes no distinction between "powerful" men and "powerful" women, there is evidence in the summary judgment record that Cooper treated women differently than men in the workplace, that the different treatment was based on gender, and that this different treatment was to the disadvantage of women. This is not a situation where the evidence establishes simply that women take more offense at the conduct than do men. Rather, there is evidence that Cooper did not misbehave around men, but did act out with women. (See, e.g., Doc. #66-3, p. 58; Doc. #66-4, pp. 43, 59; Doc. #70, pp. 2-8.) Since at the summary judgment stage the Court

should make all reasonable inferences in favor of the non-moving party, the Court finds sufficient evidence to create a fact issue for a jury as to whether Cooper's conduct was based on gender animus or simply a management style some found offensive. Plaintiff has therefore satisfied this component of the discrimination requirements.

### (2) Harassment Sufficiently Severe or Pervasive

Having found that the conduct could be found by a reasonable jury to be gender-based, the final issue is whether the conduct could reasonably be found to be sufficiently severe or pervasive. The Supreme Court summarized this component of the sexual harassment standard:

> [S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment. [ ] Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. [ ] Hence, a recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (internal citations and quotations omitted); see also Johnson, 234 F.3d at 509; Gupta, 212 F.3d at 586. The court employs a cumulative totality of the circumstances approach, and does not require proof of each factor individually. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004).

Title VII "does not prohibit all verbal or physical harassment in the workplace," and "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." <u>Oncale</u>, 523 U.S. at 80-81. Instead, Title VII prohibits only the type of severe or pervasive sexual harassment that "alter[s] the conditions of the victim's employment." <u>Id.</u> at 81 (quotation omitted). The Court looks for guidance to relatively recent cases which have found conduct to have been sufficiently severe or pervasive, including <u>Reeves</u>, 594 F.3d 798, <u>Freytes-Torres v. City of Sanford</u>, 270 Fed. Appx. 885, 890-91 (11th Cir. 2008); <u>Hulsey</u>, 367 F.3d at 1248-49; <u>Johnson</u>, 234 F.3d at 506, and compares them to cases which have found the conduct to be insufficiently severe or pervasive, including <u>Howard v. United Pruitt Corp.</u>, 196 Fed. Appx. 780, 781 (11th Cir. 2006); <u>Breeden</u>, 532 U.S. at 270-71; <u>Mendoza</u>, 195 F.3d at 1246-47; and <u>Gupta</u>, 212 F.3d at 585-86.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that no reasonable jury could conclude that the conduct in this case satisfied either the severity or pervasiveness requirements. It appears that much of the conduct plaintiff alleges was harassment was in fact annoyances and communication issues that do not come close to creating a hostile work environment. For example, plaintiff complains that Cooper was generally unresponsive to her emails and calls and that he would make her wait for and then cancel meetings, which was intentionally disrespectful. (Doc. #70,

-14-

p. 9-10.) Plaintiff also complains of getting "make work" assignments in May and August 2007 where Cooper demanded a "huge amount of data to be prepared that he later told Smith he'd ignored in the decision making process." (Id. at 11.) With regard to the more substantial allegations, plaintiff identifies three incidents in which Cooper allegedly acted excessively aggressive, angry, and physically threatening between November 2007 and April 2008. Plaintiff also identifies another incident with Cooper where he went "ballistic" over a minor matter four years prior. (Id. at 9.) Isolated screaming incidents are not sufficiently severe to alter the conditions of the plaintiff's employment and create a hostile work environment. See Howard, 196 Fed. Appx. at 781; Metz v. Home Depot, U.S.A.,Inc., No. 8:06-CV-394, 2007 U.S. Dist. LEXIS 80442 at *56 (M.D. Fla. Oct. 30, 2007) (citing Harris, 510 U.S. at 21-22). This conduct, combined with the other alleged harassment set forth in the record, does not rise to the level of the severity required to maintain a hostile work environment claim.

Additionally, with regards to the frequency of the conduct, even plaintiff complained of the infrequency that Cooper interacted with her. In fact, the "overarching problem Smith had with Cooper was his ignoring her; . . ." (Doc. #70, p. 9.) Having taken into consideration the cumulative effect of the calculated lack of communication, make-work assignments, "petty slights", and the screaming incidents, as well as all the conduct summarized by plaintiff (id. at 9-12), Smith has not shown that the conduct was

objectively either severe or pervasive in order to establish a claim for hostile work environment. Accordingly, the Court will grant NCH's motion for summary judgment as to Counts I and IV.

## B. Termination of Employment

Plaintiff alleges that her termination from employment was both discrimination based on sex and retaliation for her protected activities. Since Smith does not allege that the 21st Century sale itself was done with discriminatory intent (doc. #50, p. 9), her claim must be premised on the fact that NCH did not continue to employ Smith after the 21st Century sale.

The parties agree that the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981), applies to these claims. Under this framework, an employee must first establish a *prima facie* case of discrimination before the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for the discrimination, after which the burden shifts back to the plaintiff to produce evidence sufficient to allow a reasonable fact finder to conclude that the employer's reasons were pretextual. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).

### (1) Prima Facie Case

Plaintiff's second category of disparate treatment discrimination in violation of Title VII is that she was terminated because of her sex.

Ordinarily, to establish a prima facie case of discrimination under Title VII, the plaintiff must establish that (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job [ ] In reduction-in-force cases, however, a plaintiff establishes a prima facie case of discrimination by (1) showing that [she] was a member of a protected group and was adversely affect by an employment decision; (2) proving that [she] was qualified for [her] position or to assume another position at the time of the discharge; and (3) producing sufficient evidence from which a rational fact finder could conclude that his employer intended to discriminate against him in making the discharge decision. [ ] We have held that, in reduction-of-force cases, the employer "seldom" seeks to replace the discharged employee.

Lawver v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 772-73 (11th Cir. 2008) (internal quotations and citations omitted).

Plaintiff also alleges that her termination was in retaliation for engaging in protected activities. Furthermore, plaintiff alleges that her protected activity was the substantial motivating factor in not being placed elsewhere within NCH and for NCH offering her a "meager" 12 week separation package. (Doc. #1, p. 10.) In order to establish a prima facie case of retaliation under Title VII, an employee must show that: (1) she was engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008); Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

The parties focus on the retaliation claim, so the Court will do likewise. Defendant asserts that plaintiff's retaliation claims must fail because there is no causal connection between her termination and the filing of her November 30, 2007 EEOC charge of discrimination. (Doc. #50, p. 27.) Plaintiff responds that filing the first EEOC charge was not her only protected activity, and that she has satisfied the light burden relating to causation.

"To establish that causal connection, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)(citation and internal quotation omitted); Goldsmith, 513 F.3d at 1277-78. This burden may be satisfied by showing a very close temporal proximity between the statutorily protected activity and the adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Temporal proximity is calculated beginning, "on the date the employer gains knowledge of the protected expression." Raspanti v. Four Amigos Travel,Inc., 266 Fed. Appx. 820, 823 (11th Cir. 2008) (internal quotation omitted)(citing Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); see also Breeden, 532 U.S. at 273-274. In this case, Cooper received a faxed copy of Smith's EEOC charge on November 30, 2007. (Doc. #70, p. 25.) The time lapse between the November 30, 2007 EEOC charge and the April 25, 2008 termination, by itself, is insufficient to create a jury issue on causation. See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006)

("[I]n the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.")

However, plaintiff argues that in determining whether there is temporal proximity between her protected activity and the adverse employment action, the Court should take into consideration that NCH is unable to give an exact time line of the circumstances that lead to the decision to terminate Smith. (Id. at 25-26.) If the decision was made prior to Smith's April termination date, then there could be temporal proximity sufficient to show causation. Additionally, plaintiff alleges that there is other circumstantial evidence of causation. NCH is unable to pinpoint who made the decision to terminate Smith, and their exact reasons why. (Doc. #70, pp. 25-26.) Because there are questions of fact regarding whether the decision to terminate Smith was actually made at an earlier date, thus creating temporal proximity, and who decided Smith should be terminated, the Court finds that there is sufficient evidence of causation to sustain a *prima facie* case.

**(2) Legitimate, Non-Retaliatory Reason for Termination**

Defendant argues that even if plaintiff has established the *prima facie* case, defendant has rebutted that showing by producing evidence of a legitimate, non-retaliatory business reason for the termination and plaintiff has failed to show that proffered reason

was a pretext for retaliation.  An employer's burden of rebuttal is "extremely light."  <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1495 (11th Cir. 1989).  The Court finds that defendant has presented ample evidence of a legitimate, non-retaliatory reason for plaintiff's termination in conjunction with the down-sizing and sale of units of the hospital.  NCH asserts that plaintiff's position was eliminated due to sound business decisions.  (Doc. #50, p. 28.)  When NCH sold its radiation therapy practice to 21st Century, plaintiff's position was eliminated because the entire practice group's positions were eliminated.  (<u>Id.</u>)  Further, while plaintiff did retain some duties outside of the radiation therapy practice, those duties were absorbed by current NCH employees.  (<u>Id.</u> at 30.)  With regards to plaintiff's separation package, although plaintiff argues that two previously separated administrative directors were offered 30 weeks of separation pay, NCH argues that both of the directors who received 30 weeks separation pay separated with NCH in 2003, over 5 years ago.  (Doc. #50, p. 34)  Furthermore, the only evidence regarding how separation pay is calculated since 2006 was presented by NCH, and Smith was offered pay according to the NCH unwritten practice.  (<u>Id.</u> at 11-12.)

In light of NCH's legitimate business reasons for terminating Smith as well as for the offered separation package, the presumption of retaliation created by the *prima facie* case disappears, and the plaintiff must demonstrate that the employer's reasons are a "pretext for prohibited retaliatory conduct."  <u>Johnson v. Booker T.</u>

Washington Broad. Serv., Inc., 234 F.3d 501, 507 n.6 (11th Cir. 2000).

**(3) Showing of Pretext**

A plaintiff can satisfy her burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. There must be sufficient evidence to allow a reasonable fact-finder to conclude that the employer's articulated reasons are not believable. Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Id.; Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). The plaintiff must present significant and probative evidence of pretext in order to avoid summary judgment. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).

If the proffered reason was legitimate and nondiscriminatory, then the plaintiff must meet the proffered reason head on and rebut it, and cannot succeed by simply quarreling with the wisdom of that reason. Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). The Court must "not act as a super-personnel department that reexamines an entity's business decisions; rather we limit our inquiry to whether the employer gave an honest explanation of its behavior." Thomas v. CVS/Pharmacy, 336 Fed.

Appx. 913, 914 (11th Cir. 2009) (internal quotations omitted). A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. Id.; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Thus, the Court must determine, "in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Conner v. Lafarge N. Am., Inc., 343 Fed. Appx. 537, 541 (11th Cir. 2009).

Smith first argues that NCH departed from its policy that the Chief HR Officer or his designee must review all dismissals and in her case, Smith's termination was presented as "a *fait accompli*" thus, there is a question of material fact as to whether NCH's proffered reasons for termination are pretextual. (Doc. #70, p. 29.) Secondly, Smith alleges that NCH has not shown who made the final decision to terminate Smith. Further, Smith argues that NCH did not notify Smith with enough notice that her position was going to be eliminated so that they could help find placement for her within the company. (Doc. #70, p. 29-30.) Smith suggests that Cooper should have given her a "heads up" that her position was to be eliminated, so that she would have the opportunity to look elsewhere in NCH for a position. (Id. at 15.)

None of Smith's arguments meet NCH's legitimate reasons head on. Smith does not deny that she had substantially fewer responsibilities at NCH after the 21st Century sale, only that she continued to have tasks beyond the radiation therapy practice. Whether Smith's remaining tasks justified retaining her as a full time employee, or whether it made better business sense to distribute those tasks to other employees and terminate Smith, is a personnel decision this Court shall not second-guess. Further, the fact that NCH did not tell Smith sooner that she would be terminated giving her the opportunity to be placed in another position within the company fails to show pretext. Smith failed to present evidence that she was qualified to assume another position within the company or that NCH had a record of creating jobs to retain employees.

Additionally, NCH's deviation from its normal policy regarding Smith's termination, by itself, does not show discriminatory animus. Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999). Smith produced no evidence that the deviation from company policy was due to her protected status or activity. The fact that NCH is unable to identify who made the decision to terminate Smith may show some weaknesses in NCH's stated reasons for Smith's termination. However, not pinpointing who was the final decision maker does not create a sufficient basis for a reasonable fact-finder to believe that discrimination or retaliation was the real reason Smith was terminated. Furthermore, there was evidence that Smith's

termination was not pretextual considering the sale of the entirety of the radiation therapy practice and Smith's other duties being absorbed by current NCH employees, two of whom are female. Smith only created a weak issue of fact as to whether NCH's were pretextual and there was ample evidence that NCH terminated Smith due to legitimate business reasons. See Chapman v. AI Transp., 229 F.3d 1012, 1025 n.11 (11th Cir. 2000)(quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)). Accordingly, NCH is entitled to summary judgment on Counts II and V.

With regards to plaintiff's claim that she was terminated because of sex, this case should be evaluated as a reduction-in-force case. NCH sold its radiation therapy practice eliminating all employees associated with that practice group and allowing 21st Century the opportunity to hire them at will. (Doc. #50, p. 8.) Smith fails to establish a *prima facie* case. While Smith is a member of a protected class, was subject to an adverse employment action, and was qualified for her position, she cannot show that she was qualified to assume another position, or that NCH intended to discriminate in making the termination decision. Smith asserts that she had "excellent" reviews and that NCH should have found another position for her. The fact that plaintiff was not replaced and her duties were redistributed to current employees, two of whom are female, goes to show that NCH did not eliminate her position due to her sex. See, e.g., Lawver, 300 Fed. Appx. at 773; Verna v. Public

<u>Health Trust of Miami-Dade County</u>, 539 F. Supp. 2d 1340, 1353 (S.D. Fla. 2008)(citing <u>Moore v. Ala. State Univ.</u>, 864 F.2d 103, 105 (11th Cir. 1989)); <u>Lieberman v. Miami-Dade County</u>, No. 99-1714, 2000 U.S. Dist. LEXIS 14789 at *18 (S.D. Fla. Aug. 16, 2000). Thus, NCH is entitled to summary judgment on Counts III and VI.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment, Including Plaintiff's Declarations Filed in Support is **GRANTED in part** and **DENIED in part.**

2.  Defendant's Dispositive Motion for Summary Judgment (Doc. #50) is **GRANTED** as to all Counts.

3.  The Clerk of the Court shall enter judgment accordingly as to Counts I-VI in favor of defendant and against plaintiff. The Clerk is further directed to terminate all pending motions and deadlines as moot, cancel all hearings, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___20th___ day of May, 2010.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record